UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
EEOC,

                                  Plaintiff(s),                    **ORDER**
                                                      CV06-5302 (ERK)(WDW)

          -against-

GRACE CHURCH and
THE EPISCOPAL DIOCESE OF LONG ISLAND,
                                  Defendant(s).
-------------------------------------------------------------------X
**WALL, Magistrate Judge:**

Before the court is the plaintiff's motion to compel and for sanctions. DE[117]. For the

reasons set forth herein, the motion is granted in part and denied in part.

Familiarity with the factual and procedural background of this lawsuit is assumed. In this

motion, the plaintiff seeks an order compelling the defendant Diocese to produce a new 30(b)(6)

witness and responses to various document requests.

**The 30(b)(6) witnesses:** The plaintiff argues that the two 30(b)(6) witnesses produced by

the Diocese -Diane Porter and Louise Baietto- were not sufficiently knowledgeable and that the

Diocese's lawyer improperly directed the witnesses and disrupted the depositions with

unnecessary and frequent objections. The court agrees that there were problems with the

30(b)(6) deponents that require a new deposition. As a threshold matter, the court is dismayed by

the apparent failure of the Diocese to inform the deponents of the topics on which they would be

deposed and to instruct them as to the role of a 30(b)(6) witness. The deponents stated that they

were not shown copies of the 30(b)(6) notice, and there was no review of documents in

preparation for the depositions. Further, a review of the Porter transcript strongly suggests that

the witness did not understand the function of a 30(b)(6) witness - to speak for the entity, not to

state personal views or opinions, a misunderstanding that was not only not corrected by the

Diocese's lawyer, but was supported by her.  Under these circumstances, the Court agrees with the plaintiff that the Diocese did not "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the EEOC or] to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed. . . " *SEC v. Morelli,* 143 F.R.D. 42, 45 (S.D.N.Y. 1992).

These depositions are yet another example of the Diocese's attempts to use Judge Korman's bifurcation order to limit discovery far beyond what the undersigned believes Judge Korman intended.  A new 30(b)(6) witness or witnesses must be produced.  The Diocese is directed to produce a 30(b)(6) witness or witnesses who can fully answer questions about the areas set forth by the EEOC, specifically those questions going to "Diocesan control over clergy discipline and investigations of clergy misconduct," including questions about Heron Sam, the St. James lawsuit, and Emmanuel Nduka.  *See* EEOC Mem. in Supp. at 4.  The timing of the deposition is at the plaintiff's discretion.  I have recommended in a Report and Recommendation of this date that the bifurcation order be vacated.  The plaintiff may wish to defer the deposition(s) until Judge Korman has ruled on the recommendation so that, if it is adopted, they can be conducted on all areas of discovery, rather than on the integrated enterprise issue alone.  If it is not adopted, the Diocese shall produce the new 30(b)(6) witness within two weeks of Judge Korman's ruling, with the deposition limited to the integrated enterprise issue, as delineated in this Order.  If  the plaintiff prefers not to wait until Judge Korman rules on the recommendation, the Diocese shall produce the witness within two weeks of this order, to answer questions on the integrated enterprise issue.

Although I am disturbed by the Diocese's failure to provide a prepared witness or

witnesses who could answer all pertinent questions, and by the improper limitations it placed on the questions asked, I will not impose sanctions at this time. The EEOC did get information from the witnesses, and the court trusts that the Diocese will move forward in good faith. The Diocese is warned, however, that any future foot-dragging or obstructing of discovery will be sanctioned.

**Document Demands:**

The EEOC moves in regard to several document requests that were only partially responded to, despite a court order requiring production. See DE[81] and [91].

Document request four sought claimants' complete personnel files from both defendants. The EEOC says that neither defendant has produced them. The Diocese, through the affidavit of Louise Baietto, the Director of Finance and Administration for the Episcopal Diocese of Long Island, states that it has no such files for Mildred Spencer or Robin Mooney. The court has no reason to doubt this assertion. The Church, however, must have such files and is ordered to produce them upon receipt of this order.

Document request number five sought Reverend Powell's personnel file. Ms. Baietto states that the Diocese has produced all the responsive documents it had. *See* DE[126-3]. Again, the court has no reason to doubt that assertion, but cautions that if there are any more responsive documents in the possession or control of the Diocese, they must be produced now.

Document request number six sought all documents concerning policies for the selection of interim rectors. The EEOC states that documents that "would have been covered by these requests have never been produced, including the executed letter of agreement for Powell's employment at Grace Church," as well as the guidelines for being granted a license to officiate in

the Diocese of Long Island, and the Diocesan Transition and Deployment Policy.  *See* DE[119] at

10.  The Diocese states that it has produced all of the responsive documents it could find, and

that a search for the documents specified by the EEOC was unsuccessful.  The EEOC asks that

the Diocese explain why those documents are missing, and the Diocese is directed to do so.

Document request number 10 sought documents concerning the number of employees of

the Diocese and/or Grace Church, including payroll records and other forms.  The Diocese

provided some redacted documents, but the EEOC says that it was impossible to determine the

desired information from the documents produced and wants a supplemental production.  The

Diocese argues that the production of these documents, which would require massive redactions,

would be overwhelming. It is entirely unclear why the Diocese is once again raising an argument

that was, or should have been, raised in the earlier motion practice.  I do recognize the magnitude

of the production, and suggest that the parties try to resolve this issue by having the EEOC

specify exactly what it hopes to learn from these documents and the Diocese, considering other

ways in which the EEOC might gather that information.  But if that process is unsuccessful, then

the Diocese must produce the documents, as previously ordered.  If the Diocese were less

contentious and obstructionist in its approach to the discovery process, such comprehensive

production might be avoided.

The same is true as to document request number 18, which sought communications

between the Diocese and its parishes concerning "training or informational programs, employee

relations, employee benefits, employee discipline, personnel matters, and business matters."

The Diocese takes the position that numerous documents have already been produced, and that

full compliance with this request would be overwhelmingly burdensome, given that there are 146

parishes in the Diocese.  The fact remains, however, that they were ordered to comply with this request by my order, and although that order was modified by Judge Korman in his order of July 24, 2009 (DE[91]), compliance is still required.  As with request number 10, I recognize the scope of the request, but I am concerned by the EEOC's assertion that it became aware of a number of the requested documents by obtaining documents filed by the Diocese in another lawsuit.  The EEOC observes that "when it is in its own interest to do so, the Diocese is quite capable of locating documents demonstrating the interrelatedness of the Diocese and a parish." DE[119] at 12 n.9.  Under these circumstances, the parties should again try to agree to a compromise on the production, but if they do not, the Diocese is directed to produce all responsive documents, including, as to Grace Church,  "correspondence concerning Grace Church's contributions to the Diocese, Rev. Jack Reeves's retirement and renunciation of his vows and a parishioner's complaint concerning Reverend Blair Hatt.

As to requests number 14 and 15, the EEOC states that request number 15 sought all documents "concerning sworn or unsworn statements, emails, interview notes or memoranda made or obtained by the Diocese and/or Grace church from any person concerning any act, circumstances, or event concerning the subject matter of this litigation or any of the parties' claims or defenses." DE[119] at 9.  The Diocese says that only document request 14 applied to it, while request number 15 was directed to the Church, and that it has produced all documents that it could locate in response to number 14.  DE[126].  I cannot determine, on the record before me, if this is accurate. The parties are directed to review the requests and to determine if more documents are owing from the Diocese and to proceed accordingly.

The Diocese is also ordered to respond to supplemental document request 32.

Dated: Central Islip, New York
      January 15, 2010

**SO ORDERED:**

 /s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge